IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CR3139 |
| | ) | |
| v. | ) | |
| | ) | |
| JUAN MARCO LUCAS, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |
| | ) | |

    This matter is before the court on the government's motion for detention. At the initial detention hearing on November 6, 2008 evidence was adduced and the parties were given an opportunity to brief issues concerning the defendant's status with Immigration and Customs Enforcement. In the government's brief were references to additional facts that had not been put forth during the hearing. The government requested an additional hearing, and the court granted the request. Additional evidence was adduced at a second detention hearing on December 18, 2008.[1]

    There are some points of factual agreement, and some matters on which the facts are unclear. The evidence before the court at the detention hearings fails to establish that defendant's release would pose a risk to the safety of another person or the community. It does, however, establish by a preponderance that the defendant's release would pose a risk of nonappearance. Such a risk arises from two possible scenarios: first, the defendant could abscond; and second, the defendant could be removed from the United States by the Immigration and Customs Enforcement Agency of the Department of Homeland Security ("ICE"). While

---

[1] The court notes again that the government had plenty of time to produce the additional evidence at the time of the initial detention hearing, and should have done so.

there is evidence before the court establishing the former risk, there is no evidence establishing the latter.

There is probable cause to believe the defendant has engaged in activities commonly referred to as fraud relating to identification documents, fraudulent transfer of identitification documents, and fraudulent use of identification documents.  He stands charged in a three-count indictment charging violations of 18 U.S.C. §§ 1028(a)(7), 1028(a)(2) and 1546(a), which carry maximum sentences of fifteen years, fifteen years, and ten years, respectively.

The pretrial services report states that defendant reported he is 43 years old and a citizen of Guatemala who entered the United States in 1989, at which time he applied for asylum.  He twice applied for Employment Authorization Cards from the Immigration and Customs Enforcement Agency, once using his brother's name.  He was issued such an authorization card in 1991, and it expired in 2005.  The report also states that his asylum application has been "closed."  He has never used drugs, but does use alcohol.  He is in good health.

The report also states that defendant has been arrested six times using names not his own, five of them using his brother's name.  All but one of his prior arrests relate to driving offenses, the most recent in 2006.  The present case is apparently his first felony charge.  He has never before been incarcerated.  He is employed and has lived in the same community for eight years.  He has four children who resided, until December 18, 2008, with him and their mother.[2]  His parents, one

---

[2] Defendant's wife/partner was arrested and taken into ICE custody outside the courtroom of the undersigned just prior to

brother, and two other children reside in Guatemala, and he stated to the pretrial services officer that he has "regular" contact with them, but he has not traveled back to Guatemala since he entered the United States.

Testimony by Larry Sattley, a Special Agent for ICE assigned to this case was that there were two applications for asylum in this case. First, one in 1991 in the name of Felipe Marcos Lucas. That application was closed in 2005 for bad address or for failure to show up for an interview. A second application for asylum was filed in 1992 in the name Juan Marco Lucas, the defendant's name. It was administratively closed in 2005 or 2006, again for administrative reasons. Neither application was "denied" on the merits.

Agent Sattley testified that he was assigned this investigation (that is, the selling of fraudulent identification documents, not the filing of bogus asylum applications or being illegally in the United States) in 2005. In the course of his investigation he determined in 2005 that the fingerprints of "Felipe Marcos Lucas" on the 1991 asylum application and those of "Juan Marco Lucas" on the 1992 application were the same. He also ran a check with NCIC, the National Crime Information Center, and received information about the defendant's criminal record. That information in 2005 would have included arrests/fingerprinting of the defendant once in 1995 in Georgia, once in 1999 in Gosper County, Nebraska, twice in Saline County,

---

the detention hearing on December 18. She thus is not presently living at defendant's residence. There is no evidence in the record as to whether she will be removed from the country imminently, nor whether she could be released from custody on bail and allowed to stay in this country. Thus, I draw no inference from her arrest.

3

Nebraska in 2003, and once in Lancaster County, Nebraska in 2004, together with the names used in those police contacts.  However, he did not take action to locate the defendant at that time, because his attentions were directed to "another investigation." According to Agent Sattley, defendant is not lawfully in the United States and has no lawful authorization to work here. Thus, defendant has never been subject to removal proceedings by ICE.  ICE has lodged a detainer against him.

Agent Jason Albers of the Office of Inspector General of the Social Security Administration testified that he was involved in investigating the actions leading to the defendant's indictment. On September 17, 2008 a confidential informant working with law enforcement purchased identity documents from defendant, consisting of 11 birth certificates of actual persons and matching Social Security cards.  Defendant said to the informant that he had purchased such documents from a source in Puerto Rico and was selling them to illegal aliens in Nebraska.  A search warrant was obtained to search defendant's residence, and among the items found in the residence were 16 more sets of birth certificates and Social Security Cards.  Three or four of the Social Security cards were counterfeit.  Also found was a drivers license in the name of "Felipe Lucas" which bore defendant's picture, and three employment authorization cards with defendant's photo, one in the name of "Felipe Lucas."

Agent Albers also testified that defendant told a confidential informant in September, 2008 that he intended to go back to Guatemala permanently "in December."  By proffer, defendant denied making the statement and denies any such intention.

4

Agent Albers also testified that since his arrest the defendant has been cooperating with law enforcement and has provided information to them concerning his sources and other information which is valuable to them. He indicated that in the event such information leads to formal charges, it is likely that defendant's testimony would be at least useful, if not necessary.

The Bail Reform Act favors the release of a defendant, and on the subject of nonappearance, says, "The judicial officer *shall* order the pretrial release of the [defendant] . . . *unless* the judicial officer determines that such release will not reasonably assure the appearance of the person . . . ." 18 U.S.C. § 3142(b). In this case there may be conditions of release that could be fashioned which would "reasonably assure" that the defendant would not abscond. 18 U.S.C. § 3142(c)(1)(B). Hence, but for the ICE detainer placed against him, the risk that the defendant would fail to appear might be significantly lessened.

The Bail Reform Act does not permit this court to speculate on the "risk" that a defendant would not appear in this court due to his being removed from this country by the same government that is prosecuting him. If any release order is entered in this court, no matter what those conditions, defendant will be released by the U.S. Marshals to the ICE detainer and taken into custody by ICE. It will then be up to an Immigration Law Judge to determine whether defendant is removed from the United States. The "risk" of an order of removal is one over which this court has no control, and whether the defendant has had, still has, or may have an application for asylum pending, and if so, the merit of such an application, are issues that, while relevant to the ILJ's decision, are not relevant to the issue of his absconding.

There is no predicting the actions of ICE because the defendant is not in its custody, and ICE will not address his eligibility for bail until he is in its physical custody.  In other words, while I can reduce the risk of defendant's absconding so as to meet the criteria of the Bail Reform Act, I cannot address the risk of removal without speculating about what the Immigration Judge may do.  As noted, this defendant has not been the subject of removal proceedings and there is no outstanding order of removal.  The parties seem to agree that should such proceedings be initiated, he might be eligible for consideration of bail, and that he might also renew his application for asylum, but neither of those events has happened.  This situation differs markedly from one in which a defendant has already been the subject of a removal order.  An outstanding order of removal would be strong evidence of likely nonappearance.

The evidence before the court supports the conclusion that if ICE wanted to remove the defendant from the United States, they could have found him in 2005 or 2006 and simply initiated removal proceedings.  They did not do so.  Second, they could have initiated removal proceedings instead of indicting him in this case, and they did not do that, either.  Third, they could have initiated removal proceedings contemporaneous with his arrest in September, 2008, and they also did not do that.  Thus, I do not consider the risk of removal by ICE to warrant detaining defendant in the custody of U. S. Marshals.

However, the testimony concerning the possession of various identification documents and the possession of documents bearing defendant's picture but others' names provides a risk of nonappearance.  In addition, the testimony that defendant stated to the confidential informant that he intended to "permanently"

leave the United States "in December," is credible and very troubling.

Defendant proposed he be released to the third-party custodianship of another person, to be placed on house arrest at his current residence on electronic monitoring, and the posting of a sizeable bond. I have no information, however, that such an arrangement is even possible, and even if it were, it would not sufficiently overcome the evidence of risk of flight to "reasonably assure" the defendant's appearance in this court. I therefore conclude the defendant should be detained.

IT THEREFORE HEREBY IS ORDERED, the defendant shall be detained in the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. He shall be afforded reasonable opportunity for private consultation with counsel. On order of a court of the United States or on request of an attorney for the government, the United States Marshal shall deliver the person for appearance in connection with this proceeding.

DATED this 19th day of December, 2008.

BY THE COURT:

s/ *David L. Piester*
David L. Piester
United States Magistrate Judge